**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **MARY TYES-WILLIAMS,** ) | |
| **36901 County Road 507, Apt. 911** ) | |
| **Itta Bena, Mississippi 38941** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. _____** |
| ) | |
| **JEFF SESSIONS,** ) | |
| **As the Attorney General** ) | |
| **Of the United States,** ) | |
| **United States Department of Justice,** ) | |
| **950 Pennsylvania Avenue, NW** ) | |
| **Washington, DC 20530-0001** ) | |
| ) | |
| **Defendant.** ) | |

_____ )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Mary Tyes-Williams, by and through her undersigned counsel, hereby files this

Complaint against Jeff Sessions, as the Attorney General of the United States, for discrimination,

retaliation, and hostile work environment in violation of the Civil Rights Act of 1964, as

amended, 42 U.S.C. 2000e *et seq.* ("Title VII").

### PARTIES AND JURISDICTION

1.      Ms. Tyes-Williams is an African-American female.  Ms. Williams has been

employed by the United States Department of Justice, Federal Bureau of Prisons (the "Bureau")

for approximately 13 years.  Ms. Tyes-Williams's official duty station is the Bureau's central

office, located at 320 1st Street, NW, Building 400, RM 2017, Washington, D.C. 20534, but Ms.

Tyes-Williams works remotely from the Bureau's Yazoo City, Mississippi Federal Correction

Institution, 2225 Haley Barbour Parkway, Yazoo City, Mississippi 39194.

2.      Defendant Jeff Sessions is the Attorney General of the United States and the head of the United States Department of Justice.  The Bureau, which is a division of the Department of Justice, is an agency as that term is defined in 5 U.S.C. § 552(a)(1) for the purposes of 42 U.S.C. § 2000e-16(a).  Jeff Sessions is sued in his capacity as Attorney General and head of the United States Department of Justice.

3.      Jurisdiction is proper in this Court pursuant to 42 U.S.C. § 2000e-16(c) and 28 U.S.C. § 1331 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

4.      Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b), as Mr. Sessions is the head of a governmental agency of the United States that does business in and is headquartered in the District of Columbia.  Ms. Tyes-Williams's official duty station is the Bureau's headquarters located in the District of Columbia, many decisions made and events giving rise to this action occurred in the District of Columbia, and key documents, including employment records, and witnesses are located in the District of Columbia.

5.      Ms. Tyes-Williams filed her formal complaint of discrimination with the United States Department of Justice, Federal Bureau of Prisons Equal Employment Opportunity Office ("EEO Office") on June 30, 2016, alleging discrimination on the basis of her race (African-American) and gender (female) and reprisal.  Ms. Tyes-Williams subsequently supplemented her charge on October 27, 2016 alleging further discrimination and retaliation.  It has now been more than 180 days from the date her complaint was filed and no final decision has been rendered.  Accordingly, Ms. Tyes-Williams exhausted her administrative remedies and may pursue her claims in this Court pursuant to 42 U.S.C. § 2000e-16(c).

# FACTS

## Background of Ms. Tyes-Williams's Employment

6.      Ms. Tyes-Williams's career with the Bureau spans more than a decade.  During her tenure, she has worked at a variety of positions for the Bureau, ranging from chaplain trainee, staff chaplain, and supervisory chaplain positions at various federal correctional complexes to a central office chaplaincy services coordinator position position.

7.      Ms. Tyes-Williams originally joined the Bureau as a Chaplain Trainee in December 2004 at the Federal Correctional Complex in Yazoo City, Mississippi.  She was then promoted to a Staff Chaplain at the same facility in September 2005 before receiving another promotion to a Department Head Chaplain in April 2008 at the Federal Correctional Institution in Safford, Arizona.  From there, Ms. Tyes-Williams was again promoted to a Supervisory Chaplain position at the Federal Correctional Complex in Lompoc, California in May 2010.

8.      In these positions, not only did Ms. Tyes-Williams provide ministry services to inmates o fall faith groups, but she also served important administrative and managerial functions, such as controlling supervision of staff chaplains, acting as associate warden, overseeing program development, and handling budgetary responsibilities.

9.      Most recently, Ms. Tyes-Williams was promoted again in June 2014 to a GS-13 level Chaplaincy Services Coordinator position reporting to the Bureau's Central Office Reentry Division, although she worked remotely first from the Southeast Regional Office in Atlanta, Georgia and then from the Federal Correctional Complex in Yazoo City, Mississippi.

10.     In this position, Ms. Tyes-Williams is responsible for working with South Central and Southeast Regional Directors, Deputy Regional Directors, and Executive staff in providing expert advice in the areas of correctional specialty and providing guidance, direction, supervision

and advice regarding programs in correctional facilities.  Ms. Tyes-Williams also works closely

with institutional chaplains, Wardens, and Associate Wardens in developing, administering,

monitoring, implementing, and evaluating all aspects of policy relating to religious ministry and

chapel programing for 33 institutions as assigned by the branch administrator.

11.     In addition, during her tenure with the Bureau, Ms. Tyes-Williams has assumed

numerous leadership and coordination roles and engaged in many leadership and managerial

trainings.

12.     Ms. Tyes-Williams also holds a Bachelor of Science in Healthcare Administration

and Planning, a Master of Divinity, and a Doctorate of Ministry, and has a Certificate in

Healthcare Administration and Planning and is a Certified Registered Addiction Specialist.  Ms.

Tyes-Williams is also an Adjunct Professor at the Apex School of Theology in Durham, North

Carolina.

13.     At all times, as reflected by her promotions and outstanding performance reviews,

as well as extremely positive feedback from staff, peers, and supervisors, Ms. Tyes-Williams has

been an excellent, hard-working, and highly regarded employee.  Her performance is most

effectively demonstrated by her performance evaluations.  Since 2007, she received an

evaluation of Outstanding in all years save the last year, as discussed in detail below.

## History of Discrimination and Retaliation

14.     Beginning in approximately November 2015, Ms. Tyes-Williams was subjected

to a pattern of discrimination on the basis of her race (African-American) and gender (female),

primarily through the acts of Heidi Kugler (Caucasian female) and Kevin Kelley (Caucasian

male).  As detailed herein, Ms. Tyes-Williams was denied career advancement opportunities

given to Caucasians and males, subjected to unfair criticisms and hostile behavior, and judged by

unjust double standards.   The actions to which Ms. Tyes-Williams was subjected are in fact representative of a broader pattern of discrimination throughout all of the Central Office.

15.     In August 2015.  Ms. Tyes-Williams reported to Ms. Kugler, who was the GS-14 Assistant Chaplaincy Administrator.  Mr. Kelley, a GS-13 Chaplaincy Services Coordinator, and Michael Castle (Caucasian male) also reported to Ms. Kugler and were Ms. Tyes-Williams's peers.

16.     Ms. Kugler regularly demonstrated favoritism towards the Caucasians in the office, particularly Mr. Kelley and Mr. Castle.  She interacted with Mr. Kelley and Mr. Castle on a regular basis and provided support and assistance to them in their projects.  In contrast, with Ms. Tyes-Williams, Ms. Kugler was cold, did not provide any support or assistance to help Ms. Tyes-Williams grow or succeed in her position, and was unfairly critical of Ms. Tyes-Williams's work.

17.     Likewise, Ms. Kugler referred to herself as Ms. Tyes-Williams's "boss," yet referred to herself as Mr. Kelley's and Mr. Castle's "co-worker" or "teammate," although they too were subordinate to Ms. Kugler.

18.     Ms. Kugler also often inappropriately inquired of Ms. Tyes-Williams as to how her husband would view her requests for promotion or travel.  For example, when Ms. Tyes-Williams asked for approval to travel to conduct staff assist visits in July 2015, Ms. Kugler asked how Ms. Tyes-Williams's husband felt about her traveling.  Likewise, when Ms. Tyes-Williams asked to change her physical duty station location in March 2016, Ms. Kugler asked how Ms. Tyes-Williams's husband felt about the relocation.  These inquiries were inappropriate and Ms. Kugler did not make similar inquiries to Ms. Tyes-Williams's male colleagues.

19.     In November 2015, the Bureau advertised an opening for the GS-15 Chief

Chaplaincy Administrator position, which served as the head of the Reentry Branch below the

Senior Executive Service level.

20.     Ms. Tyes-Williams applied for the Chief Chaplaincy Administrator position and

was well-qualified to receive the promotion.  In fact, she was recommended for the promotion by

the departing Chief Chaplaincy Administrator, Dr. Michael Smith (African-American Male).

However, she was not interviewed and was not selected for the position, despite her exceptional

credentials and the recommendation of Dr. Smith.  Instead, the position was given to Ms. Kugler.

21.     On November 12, 2015, almost immediately upon Ms. Kugler receiving the

promotion, Ms. Kugler advised Ms. Tyes-Williams that she would "support" Ms. Tyes-Williams

if she wanted to request a transfer to a position in a new branch.  The comment from Ms. Kugler

was unexpected and uncomfortable for Ms. Tyes-Williams.  She had never expressed any

interest in leaving the branch or otherwise expressed displeasure with the idea of reporting to Ms.

Kugler and the statement indicated that Ms. Kugler did not want Ms. Tyes-Williams reporting to

her or working in the Reentry Services Division any longer.

22.     As a result of Ms. Kugler's statement, Mr. Kelley's prior misconduct, and Ms.

Kugler's refusal to intervene to block his hostile actions towards Ms. Tyes-Williams, Ms. Tyes-

Williams contacted Wanda Dorsey, EEO Counselor, on November 16, 2015 to file an EEO

Complaint for Discrimination.

23.     Two days later, on November 18, 2015, Ms. Kugler gave Ms. Tyes-Williams an

order to cease performing work for the South Central and Southeast Regional branches.    There

was no basis to remove these functions from Ms. Tyes-Williams's assigned responsibilities other

than the fact that her race and gender were different than that of Mr. Kelley, Ms. Kugler, and Mr. Castle.

24.     These were duties which Ms. Tyes-Williams had performed for over a year before Ms. Kugler's promotion under her predecessor, Dr. Smith.  Furthermore, Ms. Tyes-Williams had performed exceptionally well in providing support to the South Central and Southeast Regional branches, as reflected by her outstanding performance reviews and consistent positive feedback from those branches.

25.     In removing these duties, Ms. Kugler limited Ms. Tyes-Williams's exposure and importance in the Bureau, as those responsibilities were front-facing and gave Ms. Tyes-Williams a terrific opportunity for advancement.

26.     Shortly thereafter, on November 30, 2016, Ms. Kugler took further action to stymie Ms. Tyes-Williams's room for growth and advancement.  Ms. Kugler restricted Ms. Tyes-Williams's role in the Bureau by requiring that she request and obtain explicit permission from Ms. Kugler before working on any new tasks even though such work fell within her existing job responsibilities.  Ms. Kugler did not impose the obligation to receive permission from her before working on new tasks on her Caucasian subordinates.

27.     Ms. Kugler further stymied Ms. Tyes-Williams's future career opportunities and path to advancement in December 2015 when she denied Ms. Tyes-Williams's ability to attend trainings at the MSTC despite regularly approving training for other employees.

28.     The MSTC provides specialized training to help Bureau employees acquire and maintain subject-matter expertise in relevant areas.  MSTC was founded with the explicit purpose of providing development and leadership training for both individual and agency success.

29.     After receiving her GS-13 level promotion, Ms. Tyes-Williams attended eight trainings at MSTC: on June 9-13, 2014; September 14-20, 2014; October 27-31, 2014; April 13-17, 2015; May 11-15, 2015; June 1-5, 2015; August 10-14, 2015; and August 31-September 4, 2015.

30.     In December 2015, Ms. Kugler summarily issued a mandate that Ms. Tyes-Williams could no longer continue to attend MTSC unless she was presenting, despite her continuing desire to further her education and experience through this training.  The mandate now has the practical effect of blocking only Ms. Tyes-Williams from attending training sessions at the MSTC.

31.     However, Ms. Kugler has continued to allow training for Caucasian employees. Only Ms. Tyes-Williams, an African-American female, cannot attend the training sessions.

32.     This decision was clearly due entirely to Ms. Kugler accepting the suggestion of a male, Caucasian employee and was accepted despite Ms. Tyes-Williams's protests to the contrary.  Ms. Kugler claimed the new mandate was based on budgetary constraints, even though the Branch's budget had in fact increased by $30,000.

33.     The Bureau's discriminatory actions escalated on or about February 26, 2016 when Ms. Tyes-Williams was passed over for the GS-14 level Assistant Chaplaincy Administrator position, the position vacated by Ms. Kugler following her promotion, in favor of Mr. Kelley.

34.     Ms. Tyes-Williams was more qualified for the position than Mr. Kelley.  Notably, she has a higher degree of education than Mr. Kelley, having received her Doctorate of Ministry. She has also engaged in numerous more training and development courses, including a variety of cross development courses, leadership courses, and team building courses. During her time with

the Bureau, she also engaged in far more supplemental duties and assumed more additional responsibilities than Mr. Kelley, such as serving as Public Information Officer, FOIA Coordinator, Strategic Plan Coordinator, Black Affairs Program Manager, Contractor Officer technical Representative, and a Mentor in the Bureau's Mentor/Mentee program.  Nevertheless, Ms. Kugler recommended Mr. Kelley for the position over Ms. Tyes-Williams.

35.     Moreover, Mr. Kelley was promoted despite a history of misconduct and inappropriate behavior with the Bureau, including expressing discriminatory biases against African-Americans, which should have precluded him from advancement to such an elevated position.  Among other things, Mr. Kelley has made explicit references to pornography, sex, and rape, and expressed disdain for Ms. Tyes-Williams and other African-Americans in the Branch.

36.     On one occasion in late April 2014, for example, Mr. Kelley made a presentation before 90 supervisory and Staff Chaplains and Central Office Chaplaincy Administrators and training center staff at the MSTC.  During the presentation, Mr. Kelley discussed a pornographic movie, which disturbed and upset several persons in attendance.  Despite his colleagues reporting him for this conduct, he was not disciplined.

37.     Mr. Kelley also had a history of engaging in hostile conduct toward Ms. Tyes-Williams personally, for which he was also not disciplined.  This hostile conduct occurred both while he was serving as Ms. Tyes-Williams's peer before his promotion and after he became Ms. Tyes-Williams's immediate supervisor.

38.     During the late summer and fall of 2015, Mr. Kelley, with the approval of Ms. Kugler, engaged in numerous inappropriate actions towards Ms. Tyes-Williams.  Mr. Kelley engaged in said conduct after and because he was the subject of a discrimination claim made against him by another African-American Bureau employee, Dr. Terry Saulsberry.  For example,

in mid-August 2015, Mr. Kelley wanted to discuss an item not on meeting agenda in contravention of ordinary practice.  When Ms. Tyes-Williams asked if the item could be discussed at another meeting because it had not been on the agenda, Mr. Kelley angrily yelled at Ms. Tyes-Williams in front of several colleagues at a Branch meeting.  Ms. Kugler was present and witnessed Mr. Kelley's outburst, but did not interject.  After the meeting, Ms. Tyes-Williams asked Ms. Kugler to intervene and address the issue.  Ms. Kugler refused to do so, stating only that she would give Mr. Kelley time to "calm down."

39.     Ms. Kugler never took any action to speak with or reprimand Mr. Kelley for his August outburst.  Instead, in late-August, she stated to Ms. Tyes-Williams that she should be aware that Mr. Kelley was on edge because Dr. Saulsberry had reported Mr. Kelley to the Division's Assistant Director for inappropriate and hostile treatment towards Dr. Saulsberry and other African-Americans.  Ms. Kugler advised Ms. Tyes-Williams should have resolved the issue with Mr. Kelley herself rather than reporting it.  In doing so, Ms. Kugler condoned Mr. Kelley's inappropriate behavior and retaliated against Ms. Tyes-Williams for another African-American employee's complaint of discrimination against Mr. Kelley.

40.     In early September 2015, Ms. Tyes-Williams suffered a similar outburst from Mr. Kelley, this time at the Bureau's Management and Specialty Training Center ("MSTC") in Aurora, Colorado.  Mr. Kelley again yelled at Ms. Tyes-Williams during a work session with their peers, at which Ms. Kugler was present.  After the session, Mr. Kelley then pushed a door directly into the back of Ms. Tyes-Williams's foot and leg.

41.     Ms. Tyes-Williams again asked Ms. Kugler to intervene.  Ms. Tyes-Williams informed Ms. Kugler that Mr. Kelley consistently and unprofessionally exhibited a pattern of inappropriate and hostile treatment towards her.  Ms. Kugler refused to take any action to protect

Ms. Tyes-Williams and again showed favoritism to Mr. Kelley and excused his hostile misconduct.

42.     On March 1, 2016 Ms. Tyes-Williams submitted a request to Ms. Kugler to change her duty station to Yazoo City, Mississippi.  The location would have allowed Ms. Tyes-Williams to continue all of her duties without interruption or loss in efficiency, as she already worked remotely.

43.     However, on March 14, 2016, two weeks after Ms. Tyes-Williams had submitted her request to transfer, Ms. Kugler notified Ms. Tyes-Williams that she and Patti Butterfield (Caucasian female), the Senior Deputy Assistant Director, had not taken Ms. Tyes-Williams's duty station request to the Assistant Director, Marion Feather, whose approval was necessary for the transfer.  In fact, it took more than three months for Ms. Tyes-Williams's request to finally be approved, despite the fact that Ms. Kugler herself and previously suggested that Ms. Tyes-Williams transfer.

44.     As a result of the ongoing discriminatory treatment, Ms. Tyes-Williams followed up on her original contact with the EEO office by filing an Informal Complaint/Request for Counseling on March 18, 2016.

45.     Since that filing, Ms. Kugler, Mr. Kelley, and others with the Bureau have engaged in additional acts of discrimination and retaliation with respect to Ms. Tyes-Williams's performance reviews.

46.     Ms. Kugler issued Ms. Tyes-Williams's 2016 Performance Work Plan (hereinafter, "PWP"), the document delineating Ms. Tyes-Williams's goals for the upcoming year against which her annual performance is measured, on October 2, 2015, six months after the start of the rating period.  Due to the Bureau's failure to identify and issue approved performance

measures at the start of the rating period, Ms. Tyes-Williams was compelled to work from a six

month deficit in meeting the performance measures in her PWP.

47.     Despite the disadvantage, Ms. Tyes-Williams continued to perform her duties

exceptionally well and exceeded each of her performance measures.

48.     Nevertheless, when Ms. Tyes-Williams's final rating was issued on April 15,

2016, she only received an "Excellent" rating, rather than an "Outstanding" rating.  This was the

first time in eight years that Ms. Tyes Williams had received less than an Outstanding rating.

49.     The Excellent rating did not accurately reflect Ms. Tyes-Williams's performance

or achievements during the year and was artificially reduced by Ms. Kugler to discriminate and

retaliate against her.

50.     Ms. Tyes-Williams spoke with Ms. Kugler on or about April 15 to discuss her

lowered rating.  Ms. Kugler was immediately dismissive of Ms. Tyes-Williams's concerns.

During their telephonic meeting, Ms. Kugler refused to tell Ms. Tyes-Williams what Ms. Tyes-

Williams had failed to do to achieve a higher, "Outstanding" rating.  Instead, Ms. Kugler

responded only that the expectations of the new Assistant Director of Reentry Services Division,

Ms. Feather, were different than the last Assistant Director.

51.     Ms. Kugler never identified what these new expectations were.  In fact, it had

never been communicated to Ms. Tyes-Williams or any other employee that a new standard was

in place under the new administration.  Bureau standards and basic Merit System Protections

Board principles dictate that any changes to a performance review policy or standard be

communicated to the employee.  This did not occur—neither Ms. Feather nor Ms. Kugler (or any

other Bureau employee, for that matter) relayed the existence (or content) of a new standard to

Ms. Tyes-Williams.

52.     At the end of the meeting, Ms. Tyes-Williams requested a meeting with Ms. Kugler and Ms. Butterfield to discuss her rating and the new standard.  Her request was denied by Ms. Kugler.

53.     On April 28, 2016, after Ms. Tyes-Williams's new PWP was issued for the next year (April 1, 2016 to March 31, 2017), she met with Mr. Kelley, who had become her rating official with his promotion and had drafted the PWP, to discuss several concerns she had with the PWP.

54.     The new measures in Ms. Tyes-Williams's PWP were vague and unmeasurable and included measures which were outside of her position description.  During the telephonic meeting, Mr. Kelley refused to make any changes to the PWP.

55.     Ms. Tyes-Williams followed up with another telephonic meeting with Mr. Kelley on June 1, 2016 to again discuss her PWP.  During the conversation, Ms. Tyes-Williams asked Mr. Kelley to help her understand several of her performance measures which were vague and undefined, such as "help HR be more efficient."  In response, Mr. Kelley stated that Ms. Tyes-Williams measures were "intentionally vague" "by design."  When Ms. Tyes-Williams sought to get more specific guidance on his expectations, Mr. Kelley became arrogant and condescending. In response to a question about what his expectations were for Ms. Tyes-Williams under the PWP and if he could provide examples of ways to achieve outstanding ratings, Mr. Kelley stated "I have no idea what this looks like nor what it will involve.  I will let you know during the rating period.  We don't have to know everything right now.  We have time."  He added that having that type of conversation at this time of year was "not appropriate."  When asked how Ms. Tyes-Williams's evaluation rating would be determined, Mr. Kelley's response was simply "It's part of my prerogative as a rating official."

56.     Ms. Kugler also stated to Ms. Tyes-Williams during a staff meeting on April 4, 2017 that there was a "cap" on the number of "Outstanding" ratings that could be issued in the Branch.  This was not true—the Bureau does not have a "cap" or any other limit on how many "Outstanding" ratings could be issued.

57.     On April 7, 2017, at the conclusion of the review period, Mr. Kelley issued Ms. Tyes-Williams another "Excellent" rating.  As with the "Excellent" rating the year prior, this rating did not accurately reflect Ms. Tyes-Williams's performance or achievements during the year.  As Ms. Tyes-Williams had predicted, Mr. Kelley used his purposefully and intentionally vague performance measures for Ms. Tyes-Williams to discriminate and retaliate against her.

58.     In response to receiving a falsely deflated rating, Ms. Tyes-Williams issued another memorandum to Richard Lane, the Bureau's Human Resources Manager, on April 13, 2017 challenging the rating.

59.     On May 18, 2017, the Bureau's Performance Rating Grievance Committee confirmed that Mr. Kelley had improperly lowered Ms. Tyes-Williams's rating.  The Committee reversed the Excellent rating assigned by Mr. Kelley and re-issued Ms. Tyes-Williams's rating as an Outstanding.

60.     On April 18, 2017, Ms. Tyes-Williams submitted a request to Mr. Kelley to have two days of telework per week.  Ms. Tyes-Williams was fully capable of performing her duties effectively and efficiently with this telework schedule.

61.     When Mr. Kelley sent Ms. Tyes-Williams's request up the chain to Ms. Butterfield, as he was required to do as her supervisor, he stated that Ms. Tyes-Williams should only receive one day of telework to be "consistent with" telework arrangements of others in the

Branch.  Because of Mr. Kelley's request, Ms. Tyes-Williams only received one day of telework, rather than two.

62.     Mr. Kelley's statement was completely false.  Other Branch employees who are not African-American, including Ms. Kugler, Mr. Castle, Kyu Lee (Asian-American male), Donna Alyea (Caucasian female), and Mr. Kelley himself work two to three teleworks days per week and are approved to do so by Mr. Kelley and Ms. Kugler.  In fact, these other, non-African-American employees are often granted telework rights by Mr. Kelley and Ms. Kugler without going through official Bureau channels.  In contrast, Ms. Tyes-Williams and Dr. Saulsberry, the two African-Americans in the branch, were both denied the right to telework two days per week.

63.     The foregoing actions have had a severe, negative impact on Ms. Tyes-Williams. As a result of the hostile, antagonistic, discriminatory, and retaliatory conduct described above, Ms. Tyes-Williams has suffered severe stress, anxiety, humiliation, embarrassment, and have forced her to obtain treatment from a Psychologist.

## COUNT I
## Discrimination in Violation of Title VII

64.     Ms. Tyes-Williams re-alleges and incorporates by reference Paragraphs 1 through 63 as if set forth fully herein.

65.     The Bureau, with the intent of discriminating against Ms. Tyes-Williams, engaged in a pattern of discriminatory behavior based on Ms. Tyes-Williams's sex (female) and race (African-American) as described herein, and, based on and as a result of that discrimination, denied Ms. Tyes-Williams a promotion to the GS-14 Assistant Chaplaincy Administrator position for which she was the most qualified candidate, instead promoting a less qualified Caucasian male.

66. Ms. Tyes-Williams's race and sex together were the motivating factors for the denial of promotion.

67. The denial of promotion violated Title VII, 42 U.S.C. § 2000e *et seq.*, and therefore entitles Ms. Tyes-Williams to relief.

68. As a direct and proximate result of the Bureau's discriminatory conduct, Ms. Tyes-Williams has suffered and continues to suffer injury and damage in the form of past and future loss of income and benefits of employment, lost career and business opportunities and advancements, damage to reputation, humiliation, embarrassment, fear of job loss, diminished self-confidence and self-worth, feelings of helplessness and hopelessness, fear and concern for her future ability to earn a living, and emotional distress.

69. Due to the conscious, wanton, and or reckless disregard for Ms. Tyes-Williams's federally protected rights and the severity of the Bureau's conduct, Ms. Tyes-Williams is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Tyes-Williams prays on her behalf that this Court grant judgment in her favor against the Bureau, and further:

A. Award compensatory damages, consisting of back pay, front pay, economic loss, humiliation, embarrassment, mental anguish and emotional distress caused by the Bureau's acts in an amount not less than $600,000;

B. Award punitive and exemplary damages, to be determined by a jury, and in any event no less than $300,000;

C. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

D.   Award equitable relief, including but not limited to promotion to a GS-14 position or

   higher, appropriate training, and reassignment; and

E.   Order such other relief as this Court deems just and equitable.

**COUNT II**
**Hostile Work Environment in Violation of Title VII**

70.       Ms. Tyes-Williams re-alleges and incorporates by reference Paragraphs 1 through

63 as if set forth fully herein.

71.       The Bureau, primarily through the acts of Ms. Kugler and Mr. Kelley, with the

intent of discriminating against Ms. Tyes-Williams, engaged in a pattern of discriminatory

behavior based on Ms. Tyes-Williams's sex (female) and race (African-American) as described

herein, including:

   a.   Unfairly criticizing Ms. Tyes-Williams and treating her less favorably and more

      abrasively than her male, Caucasian co-workers;

   b.   Improperly inquiring into Ms. Tyes-Williams's husband's opinions as to her

      career and professional development and decisions;

   c.   Denying Ms. Tyes-Williams a promotion to the GS-15 level Chief Chaplaincy

      Administrator position in favor of a less qualified Caucasian employee;

   d.   Suggesting that Ms. Tyes-Williams should relocate after Ms. Kugler was

      promoted over her;

   e.   Forcing Ms. Tyes-Williams to cease performing important, front-facing, high-

      profile duties and responsibilities while Caucasian males continued to be allowed

      to perform similar functions;

f.  Denying Ms. Tyes-Williams the opportunity to attend important training sessions at the request of Mr. Kelley, while Caucasian males continued to have the opportunity to attend the training;

g.  Denying Ms. Tyes-Williams a promotion to the GS-14 level Assistant Chaplaincy Administrator position in favor of a less qualified Caucasian male employee;

h.  Mr. Kelley taking repeated, hostile, aggressive actions towards Ms. Tyes-Williams, including unjustifiably yelling at and criticizing Ms. Tyes-Williams, with no efforts by Ms. Kugler or anyone else to interject and protect Ms. Tyes-Williams from this misconduct;

i.  Delaying Ms. Tyes-Williams's request to change duty locations for no valid reason;

j.  Falsely deflating Ms. Tyes-Williams's performance evaluation, delaying the issuance of Ms. Tyes-Williams's PWP, and judging Ms. Tyes-Williams by artificially inflated and purposefully vague, ambiguous, and subjective standards; and

k.  Denying Ms. Tyes-Williams's telework request for two days per week while approving two or three days for non-African-American employees.

72.     Ms. Tyes-Williams's race and sex were the motivating factors for the discriminatory and retaliatory conduct.

73.     Ms. Tyes-Williams did not welcome this conduct and perceived the working environment to be abusive and hostile.  A reasonable person in Ms. Tyes-Williams's circumstances would consider the work environment to be abusive or hostile.

74. The Bureau's conduct was sufficiently severe and/or pervasive to alter the conditions of Ms. Tyes-Williams's employment and create an abusive and/or hostile working environment in violation of Title VII.

75. As a direct and proximate result of the Bureau's discriminatory conduct, Ms. Tyes-Williams has suffered and continues to suffer injury and damage in the form of past and future loss of income and benefits of employment, lost career and business opportunities and advancements, damage to reputation, humiliation, embarrassment, fear of job loss, diminished self-confidence and self-worth, feelings of helplessness and hopelessness, fear and concern for her future ability to earn a living, and emotional distress.

76. Due to the conscious, wanton, and or reckless disregard for Ms. Tyes-Williams's federally protected rights and the severity of the Bureau's conduct, Ms. Tyes-Williams is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Tyes-Williams prays on her behalf that this Court grant judgment in her favor against the Bureau, and further:

A. Award compensatory damages, consisting of back pay, front pay, economic loss, humiliation, embarrassment, mental anguish and emotional distress caused by the Bureau's acts in an amount not less than $600,000;

B. Award punitive and exemplary damages, to be determined by a jury, and in any event no less than $300,000;

C. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

D. Award equitable relief, including but not limited to promotion to a GS-14 position or higher, appropriate training, and reassignment; and

E.  Order such other relief as this Court deems just and equitable.

## COUNT III
### Retaliation In Violation of Title VII

77.     Ms. Tyes-Williams re-alleges and incorporates by reference Paragraphs 1 through 63 as if set forth fully herein.

78.     Ms. Tyes-Williams openly opposed, challenged, and reported race and sex discrimination on several occasions, including by making initial contact with an EEO counsel on November 16, 2015, filing an informal charge of discrimination with the Bureau on March 18, 2016, and filing a formal charge of discrimination with the Bureau on June 22, 2016.

79.     After and as a direct and proximate result of Ms. Tyes-Williams exercising her rights under Title VII, the Bureau, primarily through the acts of Ms. Kugler and Mr. Kelley, with the intent of retaliating against Ms. Tyes-Williams, engaged in a pattern of retaliatory behavior as described herein, including:

a.  Forcing Ms. Tyes-Williams to cease performing important, front-facing, high-profile duties and responsibilities while Caucasian males continued to be allowed to perform similar functions;

b.  Denying Ms. Tyes-Williams the opportunity to attend important training sessions at the request of Mr. Kelley, while Caucasian males continued to have the opportunity to attend the training;

c.  Delaying Ms. Tyes-Williams's request to change duty locations for no valid reason; and

d.  Falsely deflating Ms. Tyes-Williams's performance evaluation, delaying the issuance of Ms. Tyes-Williams's PWP, and judging Ms. Tyes-Williams by

artificially inflated and purposefully vague, ambiguous, and subjective standards; and

e.  Denying Ms. Tyes-Williams's telework request for two days per week while approving two or three days for non-African-American employees.

80.  As a direct and proximate result of the Bureau's retaliatory conduct, Ms. Tyes-Williams has suffered and continues to suffer injury and damage in the form of past and future loss of income and benefits of employment, lost career and business opportunities and advancements, damage to reputation, humiliation, embarrassment, fear of job loss, diminished self-confidence and self-worth, feelings of helplessness and hopelessness, fear and concern for her future ability to earn a living, and emotional distress.

81.  Due to the conscious, wanton, and or reckless disregard for Ms. Tyes-Williams's federally protected rights and the severity of the Bureau's conduct, Ms. Tyes-Williams is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Tyes-Williams prays on her behalf that this Court grant judgment in her favor against the Bureau, and further:

A.  Award compensatory damages, consisting of back pay, front pay, economic loss, humiliation, embarrassment, mental anguish and emotional distress caused by the Bureau's acts in an amount not less than $600,000;

B.  Award punitive and exemplary damages, to be determined by a jury, and in any event no less than $300,000;

C.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

D.  Award equitable relief, including but not limited to promotion to a GS-14 position or

higher, appropriate training, and reassignment; and

E.  Order such other relief as this Court deems just and equitable.

**COUNT IV**
**Retaliatory Hostile Work Environment in Violation of Title VII**

82.      Ms. Tyes-Williams re-alleges and incorporates by reference Paragraphs 1 through

63 as if set forth fully herein.

83.      Ms. Tyes-Williams openly opposed, challenged, and reported race and sex

discrimination on several occasions, including by making initial contact with an EEO counsel on

November 16, 2015, filing an informal charge of discrimination with the Bureau on March 18,

2016, and filing a formal charge of discrimination with the Bureau on June 22, 2016.

84.      After and as a direct and proximate result of Ms. Tyes-Williams exercising her

rights under Title VII, the Bureau, primarily through the acts of Ms. Kugler and Mr. Kelley, with

the intent of retaliating against Ms. Tyes-Williams, engaged in a pattern of retaliatory behavior

as described herein, including:

a.  Forcing Ms. Tyes-Williams to cease performing important, front-facing, high-

profile duties and responsibilities while Caucasian males continued to be allowed

to perform similar functions;

b.  Denying Ms. Tyes-Williams the opportunity to attend important training sessions

at the request of Mr. Kelley, while Caucasian males continued to have the

opportunity to attend the training;

c.  Denying Ms. Tyes-Williams a promotion to the GS-14 level Assistant Chaplaincy

Administrator position in favor of a less qualified Caucasian male employee;

d.  Delaying Ms. Tyes-Williams's request to change duty locations for no valid reason; and

e.  Falsely deflating Ms. Tyes-Williams's performance evaluation, delaying the issuance of Ms. Tyes-Williams's PWP, and judging Ms. Tyes-Williams by artificially inflated and purposefully vague, ambiguous, and subjective standards.

85.  Ms. Tyes-Williams's prior EEO was the motivating factors for the discriminatory and retaliatory conduct.

86.  Ms. Tyes-Williams did not welcome this conduct and perceived the working environment to be abusive and hostile.  A reasonable person in Ms. Tyes-Williams's circumstances would consider the work environment to be abusive or hostile.

87.  The Bureau's conduct was sufficiently severe and/or pervasive to alter the conditions of Ms. Tyes-Williams's employment and create an abusive and/or hostile working environment in violation of Title VII.

88.  As a direct and proximate result of the Bureau's discriminatory conduct, Ms. Tyes-Williams has suffered and continues to suffer injury and damage in the form of past and future loss of income and benefits of employment, lost career and business opportunities and advancements, damage to reputation, humiliation, embarrassment, fear of job loss, diminished self-confidence and self-worth, feelings of helplessness and hopelessness, fear and concern for her future ability to earn a living, and emotional distress.

89.  Due to the conscious, wanton, and or reckless disregard for Ms. Tyes-Williams's federally protected rights and the severity of the Bureau's conduct, Ms. Tyes-Williams is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Tyes-Williams prays on her behalf that this Court grant judgment in her favor against the Bureau, and further:

A.   Award compensatory damages, consisting of back pay, front pay, economic loss, humiliation, embarrassment, mental anguish and emotional distress caused by the Bureau's acts in an amount not less than $600,000;

B.   Award punitive and exemplary damages, to be determined by a jury, and in any event no less than $300,000;

C.   Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

D.   Award equitable relief, including but not limited to promotion to a GS-14 position or higher, appropriate training, and reassignment; and

Order such other relief as this Court deems just and equitable.


Respectfully Submitted,


_____/s/ Nicholas Hantzes_____
Nicholas Hantzes, DC Bar No. 361450
Michael Hall, Fed. DC Bar No. VA016
HANTZES & ASSOCIATES
1749 Old Meadow Road, Suite 308
McLean, Virginia 22102
Tel: (703) 378-5000
Fax: (703) 448-4434
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

Ms. Tyes-Williams demands a trial on all claims to which she is entitled to a jury.


Respectfully Submitted,


_____/s/ Nicholas Hantzes_____
Nicholas Hantzes, DC Bar No. 361450
Michael Hall, Fed. DC Bar No. VA016
HANTZES & ASSOCIATES
1749 Old Meadow Road, Suite 308
McLean, Virginia 22102
Tel: (703) 378-5000
Fax: (703) 448-4434
nhantzes@hantzeslaw.com
mhall@hantzeslaw.com
*Counsel for Plaintiff*