# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY TYES-WILLIAMS,<br><br>    *Plaintiff*,<br>v.<br><br>MATTHEW G. WHITAKER,<br><br>    *Defendant*. | Civil Action No. 17-1191 (TJK) |

## MEMORANDUM OPINION AND ORDER

Mary Tyes-Williams, an African-American woman, has worked in various chaplaincy positions for the Federal Bureau of Prisons (BOP) since 2004. She describes the first decade of her career as a steady climb marked by superior performance reviews and robust skills development. After 11 years with BOP, however, she ran into trouble with two coworkers who at various times held supervisory positions over her and received promotions that Tyes-Williams sought for herself. From Tyes-Williams's perspective, these coworkers unlawfully discriminated against her by treating her condescendingly, interfering with her career advancement, and depriving her of advantages routinely offered to white, male employees. Tyes-Williams sought support from an Equal Employment Opportunity (EEO) counselor and later filed an EEO complaint, but she claims her coworkers' bad behavior did not abate. After BOP took no action on her formal EEO complaint, Tyes-Williams filed this lawsuit.

Tyes-Williams brings four claims, alleging discrimination, retaliation, a hostile work environment, and a retaliatory hostile work environment under Title VII of the Civil Rights Act. Defendant has moved to dismiss the latter three, arguing that Tyes-Williams failed to administratively exhaust some of her claims and that, in any case, none of them allege misconduct serious enough to state a discrimination claim. For the reasons explained below, the

Court will grant Defendant's motion and dismiss Tyes-Williams's claims of retaliation, hostile work environment, and retaliatory hostile work environment.

**I.     Factual and Procedural Background**

Tyes-Williams has worked for the BOP since December 2004.  ECF No. 1, Complaint ("Compl."), ¶¶ 1, 6, 7.  In June 2014, she was promoted to a GS-13 position as a Chaplaincy Services Coordinator with BOP's Central Office Reentry Division.  *Id.* ¶ 9.  Although this position was based in Washington, D.C., Tyes-Williams worked remotely, first from the Southeast Regional Office in Atlanta, Georgia, and most recently from the Federal Correctional Complex in Yazoo City, Mississippi.  *Id.* ¶¶ 1, 9.

According to Tyes-Williams, in her new position she was subjected to a pattern of discrimination and retaliation on the basis of her race and gender beginning in "approximately November 2015."  *Id.* ¶ 14.  She identifies two allegedly discriminating officials: Heidi Kugler and Kevin Kelley.  *Id.*   In August 2015, Tyes-Williams reported directly to Kugler, a white female.  *Id.* ¶¶ 14, 15.  Tyes-Williams and Kelley, a white male, held positions of the same grade, GS-13.  *Id.* ¶ 15.  In November 2015, the BOP advertised an opening for a GS-15 position.  *Id.* ¶ 19.  Although Tyes-Williams alleges that she was well-qualified and recommended for the position, she did not receive an interview.  *Id.* ¶ 20.  Instead, Kugler was selected for the position.  *Id.*

Tyes-Williams alleges that Kugler and Kelley proceeded to treat her in a cold, unpleasant, and hostile manner.  *See id.* ¶¶ 17–18, 21, 38, 40–41.  She contacted an EEO counselor about filing an EEO complaint of discrimination on November 16, 2015.  *Id.* ¶ 22.  Thereafter, she alleges, Kugler circumscribed her responsibilities—although not those of any white employees—and limited her advancement potential.  *Id.* ¶¶ 23–26.  Further, Kugler limited Tyes-Williams's access to training opportunities.  *Id.* ¶¶ 27–31.

2

In February 2016, Kelley was promoted to Kugler's old position, although Tyes-Williams alleges that she had applied and was qualified for it. *Id.* ¶¶ 33–34. This made Kelley Tyes-Williams's supervisor. *Id.* ¶ 33. In March 2016, Tyes-Williams requested to be transferred to Yazoo City, Mississippi. *Id.* ¶ 42. Her request was not approved for more than three months. *Id.* ¶ 43. In response to this alleged "ongoing discriminat[ion]," Tyes-Williams followed up on her original EEO contact by filing an informal complaint on March 18, 2016. *Id.* ¶ 44.

Thereafter, Tyes-Williams experienced trouble with her assigned performance standards and the performance ratings she received. Among other things, she received a less-than-perfect "Excellent" rating—her first such rating in eight years—and was frustrated by the vagueness of the standards she was expected to meet. *Id.* ¶¶ 48, 51, 54–55. Eventually, however, the rating that Tyes-Williams received in April 2017 was adjusted upward. *Id.* ¶¶ 58–60. Finally, in April 2017, Tyes-Williams requested two days per week of telework and was granted only one, despite some white employees being allowed two. *Id.* ¶¶ 60–62.

On June 16, 2017, Tyes-Williams filed the instant action. Her complaint includes four counts: discrimination (Count I), hostile work environment (Count II), retaliation (Count III), and retaliatory hostile work environment (Count IV). *See* Compl. ¶¶ 64–89. Defendant has moved to dismiss Counts II and IV for failure to allege misconduct that rises to the level of a hostile work environment claim. ECF No. 6-1, Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Counts II, III, and IV, at 7. As to Count III, Defendant moves to dismiss on the grounds that Tyes-Williams (1) has not exhausted "most subparts" of her claim, (2) has failed to allege a materially adverse action, and (3) has failed to allege a causal connection between her protected activity and some of the alleged retaliation. *See id.* at 15–23.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). The Court construes all factual inferences in favor of the plaintiff when considering a Rule 12(b)(6) motion. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). When defendants allege that plaintiffs have failed to administratively exhaust their Title VII claims, courts typically resolve the exhaustion question in the context of a Rule 12(b)(6) motion. *Augustus v. Locke*, 699 F. Supp. 2d 65, 69 n.3 (D.D.C. 2010).

## III.    Analysis

### A.    Hostile Work Environment and Retaliatory Hostile Work Environment Claims (Counts II and IV)

Under Title VII of the Civil Rights Act, federal employers may not discriminate "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). "[A] plaintiff may establish a violation of Title VII by proving that discrimination . . . has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To state a hostile work environment claim, an employee must allege misconduct so serious that it has changed "a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.* at 67. In determining whether a work environment is hostile, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Supreme Court has held that "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not sufficiently serious to create a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)). Nor are "offhand comments [or] isolated incidents (unless extremely serious)." *Id.*

Here, many of the slights Tyes-Williams experienced are of a kind that courts in this district have expressly held are, on their own, insufficient to form a hostile work environment claim. About half of the affronts Tyes-Williams identifies are interactions with Kugler or Kelley that she found offensive or inappropriate. For example, she alleges that Kugler was "cold" to her and was "unfairly critical" of her work. Compl. ¶ 16. Kugler also referred to herself as Tyes-Williams's "boss," but referred to subordinate white employees as "co-worker[s]" or "teammate[s]." *Id.* ¶ 17. After Kugler was promoted over Tyes-Williams, she said she would "support" Tyes-Williams transferring to another department. *Id.* ¶ 21. And Kugler asked Tyes-Williams how her husband would feel about her traveling or changing duty stations, which Tyes-Williams found inappropriate. *Id.* ¶ 18. As for Kelley, Tyes-Williams alleges that he yelled at her in front of her colleagues on two occasions. *Id.* ¶¶ 38, 40. But "disparaging remarks, criticisms of [the plaintiff's] work, and other negative comments" do not make a hostile work environment. *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (citing *Stewart v. Evans*, 275 F.3d 1126, 1134–35 (D.C. Cir. 2002)).[1] Similarly, neither do these allegations.

---

[1] Tyes-Williams attempts to distinguish *Nurriddin* from her own case, asserting that the plaintiff's hostile work environment claims "were dismissed in large part because, as the

Tyes-Williams makes other allegations regarding her assignments and performance evaluations, but these allegations are also insufficient to state a hostile work environment claim. Tyes-Williams alleges that when Kugler became her supervisor, she instructed Tyes-Williams to stop performing work for the South Central and Southeast Regional branches despite consistent positive feedback from those branches on her performance. Compl. ¶¶ 23–24. Tyes-Williams characterizes this work as "front-facing" and providing a "terrific opportunity for advancement." *Id.* ¶ 25. Tyes-Williams also alleges that Kugler required her—and no other employee—to obtain explicit permission before working on any new tasks, even if they fell within her existing job responsibilities. *Id.* ¶ 26. When Kugler issued performance ratings, Tyes-Williams received "Excellent" rather than "Outstanding" for the first time in eight years. *Id.* ¶¶ 46, 48. When Kelley became Tyes-Williams's supervisor, she alleges, he imposed vague performance standards that he refused to clarify to her. *Id.* ¶¶ 54, 55. And again, Tyes-Williams received a rating of "Excellent" rather than "Outstanding," which a grievance committee later corrected to "Outstanding." *Id.* ¶¶ 57–59. However, allegations of "the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management" are also not enough to state a hostile work environment claim. *Nurriddin*, 674 F. Supp. 2d at 94 (citing *Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005)).

---

employees admitted in their own pleadings, they had significant *positive* experiences with their supervisors that undercut their claims that they were subjected to a hostile work environment." ECF No. 7, Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Partial Motion to Dismiss ("Pl. Opp.") at 22. While the court in *Nurriddin* did note that the employee's promotion, performance award, and coveted detail assignment "substantially undermine[d]" the hostile work environment claim, 674 F. Supp. 2d at 94, that comprised a single sentence rather than a "large part" of the opinion. These considerations were plainly subordinate to the court's thorough analysis of whether the complained-of actions could meet the standard for a hostile work environment claim. *Id.* at 94–95.

Tyes-Williams's additional allegations also fail to plead a hostile work environment. She alleges that at one point, Kugler forbade her—and no other employee—from attending trainings at the BOP's training center unless she was presenting the training. Compl. ¶¶ 27, 30–31. Although Kugler said this decision was made for budgetary reasons, Tyes-Williams alleges that the branch's budget had recently increased by $30,000. *Id.* ¶ 32. When Tyes-Williams requested to change her duty station to Yazoo City, Mississippi, she alleges that the BOP did not approve her request for more than three months. *Id.* ¶¶ 42–43. And finally, when Tyes-Williams submitted a request to Kelley to telework two days of the week, he authorized only one day, even though a number of other employees in the office were permitted two days. *Id.* ¶¶ 60–62. But in *Beckwith v. Ware*, 174 F. Supp. 3d 1, 5–6 (D.D.C. 2014), the court found that a plaintiff's being denied an award, the opportunity to telecommute, certain training, and a transfer came "nowhere near satisfying the . . . standard" for a hostile work environment.[2] Such is the case here.

In short, Tyes-Williams alleges numerous workplace slights that closely match claims that courts in this district have held are insufficient. Of course, it is possible that a plaintiff could state a hostile work environment claim by pleading some combination of actions that courts have previously found insufficient if, in total, those actions rose to the requisite level of hostility. But that is not the case here. Tyes-Williams alleges criticism, condescension, poor management, and one instance of unwanted physical contact,[3] but considered collectively, she does not allege a

---

[2] Tyes-Williams attempts to distinguish *Beckwith* on the grounds that "there was no indication that the events [comprising the hostile work environment claim] were career-destroying or career-altering." Pl. Opp. at 24. The Court notes that the same could be said of Tyes-Williams's allegations. In fact, the factual similarities between *Beckwith* and Tyes-Williams's case are instructive, as both concern the denial of training opportunities, denial of some opportunity to telework, and the handling of a plaintiff's request to transfer to a different location.
[3] In September 2015, Tyes-Williams alleges, after Kelley yelled at her in front of their colleagues, he "pushed a door directly into the back of [her] foot and leg." Compl. ¶ 40.

pattern of behavior that altered the "terms, conditions or privileges of [her] employment." *Stewart*, 275 F.3d at 1135.

Tyes-Williams points to numerous decisions in this district that, she claims, show that her allegations have met the standard to survive a Rule 12(b)(6) challenge. Pl. Opp. at 17–19. These include *Sims v. District of Columbia*, 33 F. Supp. 3d 1, 12–14 (D.D.C. 2014), where the court found a genuine issue of material fact as to a hostile work environment where the plaintiff was singled out for night shifts, denied overtime opportunities, and given a manifestly unwarranted performance improvement plan; *Teliska v. Napolitano*, 826 F. Supp. 2d 94, 99–100 (D.D.C. 2011), where the court held the plaintiff had stated a hostile work environment claim where she alleged removal from an assignment due to false accusations of misconduct, a disfavored geographic placement, and denial of overtime opportunities; and *Winston v. Clough*, 712 F. Supp. 2d 1, 12–13 (D.D.C. 2010), where the court held that the plaintiff had stated a hostile work environment claim where he alleged "facing unsubstantiated allegations that he threatened violence against a co-worker, . . . being evicted from his workspace and barred from meetings, . . . being stripped of supervisory duties and banished to cramped work space, [and] facing a proposed suspension that was later overruled." These cases are easily distinguishable, however, because in each one, the plaintiffs' allegations concerned his or her pay, location, position, or disciplinary record. Such allegations, unlike Tyes-Williams's, go to the very terms, conditions, and privileges of employment.

Tyes-Williams makes a similar argument about *Pegues v. Mineta*, 2006 WL 2434936, No. 04-2165 (GK), at *5 (D.D.C. Aug. 22, 2006), where the court held that the plaintiff had stated a hostile work environment claim where he alleged "'countless' instances of abuse" and "many instances of offensive and inappropriate conduct." There, however, the plaintiff alleged

8

verbal abuse that was considerably more pervasive than the handful of verbal unpleasantries Tyes-Williams has identified here.

As part of her hostile work environment claim, Tyes-Williams also alleges that she was denied two promotions in favor of Kelley and Kugler, who were less qualified. Compl. ¶¶ 71(c), 71(g). She includes her denial of a promotion in favor of Kelley in her retaliatory hostile work environment claim as well. *Id.* ¶ 84(c). The Circuit has held that a plaintiff is free to attempt to plead such "discrete act[s]" as part of a hostile work environment claim. *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). But to offer any support to that claim, those discrete acts must be "adequately connected," *id.*, and must contribute to a coherent and severe or pervasive pattern of "intimidation, ridicule, and insult." *Meritor*, 477 U.S. at 65; *Baird*, 662 F.3d at 1252. And because such discrete acts tend to be "different in kind" from this type of misconduct, *Walden v. Patient-Centered Outcomes Research Inst.*, 177 F. Supp. 3d 336, 345 (D.D.C. 2016) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003)), courts in this district are generally skeptical of plaintiffs "bootstrap[ping] their alleged discrete acts of retaliation into a broader hostile work environment claim." *Id.* at 344 (quoting *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 164 (D.D.C. 2013)).

In light of these principles, Tyes-Williams's allegations that she was denied these promotions do not save her otherwise inadequately pleaded hostile work environment claims. Tyes-Williams has not pleaded any factual connection between them and the various other actions she attributes to Kugler and Kelley. She does not, for example, allege in her complaint that they were responsible for selecting those who *were* promoted or otherwise hired into the positions she sought. Moreover, viewing the allegations in the complaint as a whole, Tyes-Williams's denial of these two promotions was hardly part of a coherent and severe or pervasive

pattern of "intimidation, ridicule, and insult" that states a hostile work environment claim. *Meritor*, 477 U.S. at 65.

Because Tyes-Williams has failed to allege misconduct that meets the legal threshold for a hostile work environment claim or a retaliatory hostile work environment claim, the Court will dismiss Counts II and IV.

### B. Retaliation Claim (Count III)

Federal employers may not retaliate against an employee who "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). "In order to prevail upon a claim of unlawful retaliation, an employee must show 'she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her.'" *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007)). But to bring any Title VII claim in federal court, an employee must first have exhausted her administrative remedies. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

Defendant does not contest that Tyes-Williams engaged in protected activity. At issue here are whether Tyes-Williams exhausted her administrative remedies, whether she has alleged a materially adverse action, and whether she has adequately pleaded that an adverse action was taken against her because of her protected activity.

Tyes-Williams alleges five adverse actions in Count III of her complaint. Compl. ¶ 79. In her words, these adverse actions were:

a. Forcing [her] to cease performing important, front-facing high-profile duties and responsibilities while Caucasian males continued to be allowed to perform similar functions;
b. Denying [her] the opportunity to attend important training sessions at the request of Mr. Kelley, while Caucasian males continued to have the opportunity to attend the training;
c. Delaying [her] request to change duty locations for no valid reason; and

10

    d. Falsely deflating [her] performance evaluation, delaying the issuance of [her] Performance Work Plan], and judging [her] by artificially inflated and purposefully vague, ambiguous, and subjective standards; and

    e. Denying [her] telework request for two days per week while approving two or three days for non-African-American employees.

*Id.* Although Tyes-Williams alleges in conclusory fashion that these retaliatory actions caused "past and future loss of income and benefits of employment [and] lost career and business opportunities and advancement," *id.* ¶ 80, the Court notes that her complaint does not identify any particular loss that she sustained, nor any concrete harm at all.

### 1. Exhaustion

Title VII and EEO regulations impose numerous deadlines on employees seeking redress for discrimination, retaliation, or a hostile work environment. *Bowden*, 106 F.3d at 437. "Yet if an employee fails to meet any of those statutory or regulatory deadlines, the employee's federal court action may be dismissed for failure to administratively exhaust the claim." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017) (citing *Hernandez v. Pritzker*, 741 F.3d 129, 134 (D.C. Cir. 2013), *cert. denied sub nom. Niskey v. Duke*, 138 S. Ct. 427 (2017). Title VII's exhaustion requirements are not jurisdictional. *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011). Two requirements for federal employees are relevant here: (1) that "[a]n aggrieved person must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1); and (2) that an employee must give an agency 180 days to take action on her EEO complaint before filing suit over the alleged discrimination in federal court, 42 U.S.C. § 2000e–16(c).

#### a. The 45-Day Requirement

Courts in this district do not apply the 45-day requirement to "discrete acts of retaliation that occurred after the filing of [an] EEO charge" in a uniform way. *Redding v. Mattis*, 327 F. Supp. 3d 136, 139–40 (D.D.C. 2018). Some impose the requirement on each discrete act of

retaliation that forms the basis of a plaintiff's claim in federal court "regardless of any relationship that exists between those discrete claims and any others"; others decline to apply the requirement to discrete acts of retaliation when they are related to discrimination claims that were in fact presented to an EEO officer. *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 19 (D.D.C. 2015) (quoting *Rashad v. Wash. Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 165–66 (D.D.C. 2013)); *Mount v. Johnson*, 36 F. Supp. 3d 74, 84–85 (D.D.C. 2014). The former is the majority view. *Redding*, 327 F. Supp. 3d at 140. The Circuit has repeatedly declined to opine on which approach is correct. *See, e.g.*, *Mount v. Johnson*, 664 F. App'x 11, 11 (D.C. Cir. 2016) (unpublished); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *Weber*, 494 F.3d at 184.

Here, Tyes-Williams urges the Court to adopt the minority view and to hold that she has exhausted all of her retaliation claim because the acts of retaliation underlying it are "like or related to" those she brought to the EEO counselor. Pl. Opp. at 26–29. But imposing the 45-day requirement on each purported retaliatory act filed after an EEO charge has greater support in this district, it is most consonant with the Supreme Court's overall approach to exhausting such claims as set forth in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and it upholds "the purpose of the exhaustion doctrine, namely, 'to give the agency notice of a claim and the opportunity to handle it internally so that only claims plaintiff has diligently pursued will survive.'" *Hicklin*, 110 F. Supp. 3d at 19 (quoting *Romero–Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005)). Accordingly, the Court holds that to the extent that Tyes-Williams's retaliation claim is based on acts that she failed to report to the EEO counselor within 45 days of their occurrence, it is time-barred by 29 C.F.R. § 1614.105(a)(1).

Applying the requirement here, Tyes-Williams may not base her retaliation claim on either of the first two allegedly retaliatory actions she identifies in her complaint, nor on part of

retaliation that forms the basis of a plaintiff's claim in federal court "regardless of any relationship that exists between those discrete claims and any others"; others decline to apply the requirement to discrete acts of retaliation when they are related to discrimination claims that were in fact presented to an EEO officer. *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 19 (D.D.C. 2015) (quoting *Rashad v. Wash. Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 165–66 (D.D.C. 2013)); *Mount v. Johnson*, 36 F. Supp. 3d 74, 84–85 (D.D.C. 2014). The former is the majority view. *Redding*, 327 F. Supp. 3d at 140. The Circuit has repeatedly declined to opine on which approach is correct. *See, e.g.*, *Mount v. Johnson*, 664 F. App'x 11, 11 (D.C. Cir. 2016) (unpublished); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *Weber*, 494 F.3d at 184.

Here, Tyes-Williams urges the Court to adopt the minority view and to hold that she has exhausted all of her retaliation claim because the acts of retaliation underlying it are "like or related to" those she brought to the EEO counselor. Pl. Opp. at 26–29. But imposing the 45-day requirement on each purported retaliatory act filed after an EEO charge has greater support in this district, it is most consonant with the Supreme Court's overall approach to exhausting such claims as set forth in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and it upholds "the purpose of the exhaustion doctrine, namely, 'to give the agency notice of a claim and the opportunity to handle it internally so that only claims plaintiff has diligently pursued will survive.'" *Hicklin*, 110 F. Supp. 3d at 19 (quoting *Romero–Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005)). Accordingly, the Court holds that to the extent that Tyes-Williams's retaliation claim is based on acts that she failed to report to the EEO counselor within 45 days of their occurrence, it is time-barred by 29 C.F.R. § 1614.105(a)(1).

Applying the requirement here, Tyes-Williams may not base her retaliation claim on either of the first two allegedly retaliatory actions she identifies in her complaint, nor on part of

the fourth, because she did not report them to the EEO office within 45 days. The timeline of events reflected in the complaint makes this clear. As for the first such action, Kugler allegedly told Tyes-Williams not to work with the South Central and Southeast Regional branches on November 18, 2015; she then told Tyes-Williams to get explicit permission for performing any new tasks on November 30, 2015. Compl. ¶¶ 23, 26, 79(a). As for the second, Kugler allegedly forbade Tyes-Williams from attending BOP training in-person in December 2015. *Id.* ¶¶ 27, 30, 79(b). Neither of these actions could have been administratively exhausted, because Tyes-Williams did not make her first contact with an EEO counselor until March 18, 2016, well beyond the 45-day mark.[4] *Id.* ¶ 78. And as for the fourth action, Tyes-Williams contests the "Excellent" performance rating she received on April 15, 2016. *Id.* ¶ 48. This action similarly could not have been administratively exhausted, because Tyes-Williams did not make subsequent contact with the EEO counselor until more than 45 days later, on June 22, 2016. *Id.* ¶ 78.

Therefore, the Court will dismiss Tyes-Williams's retaliation claim for failure to exhaust her administrative remedies to the extent it is based on Kugler limiting her responsibilities in November 2015, barring her from attending in-person training in December 2015, or giving her an "Excellent" performance rating in April 2016.[5] Compl. ¶¶ 79(a), 79(b).

---

[4] Tyes-Williams argues that the BOP has waived the defense of timeliness by investigating these claims. Pl. Opp. at 26. But because BOP did not take final action on Tyes-Williams's claims, it cannot have waived the defense of timeliness. Waiver occurs when an agency not only accepts and investigates an untimely claim, but also "decide[s] it on the merits—all without mentioning timeliness." *Nurriddin*, 674 F. Supp. 2d at 86 (quoting *Bowden*, 106 F.3d at 438).

[5] Tyes-Williams also argues that her initial EEO contact, on November 16, 2015, sufficed to exhaust her retaliation claim. Pl. Opp. at 26. But as the first protected activity in which she engaged, this EEO contact cannot have both caused the subsequent retaliation against her and exhausted her retaliation claims.

### b. The 180-day Requirement

The 180-day requirement set forth in 42 U.S.C. § 2000e–16(c) applies straightforwardly to any allegations concerning discrete acts of retaliation: plaintiffs cannot file claims in federal court about any such acts that happened within the previous 180 days, because allowing such claims "contravene[s] EEOC's investigative duty and undermine[s] Congress's policy of encouraging informal resolution 'up to the 180th day.'" *Murthy v. Vilsack*, 609 F.3d 460, 465 (D.C. Cir. 2010) (quoting *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1346–47 (D.C. Cir. 1999)).

Those portions of Tyes-Williams's retaliation claim based on her performance evaluation in April 2017 and her desire for telework—part of the fourth, and the fifth, allegedly retaliatory actions she identified—are barred by this requirement. Again, the timeline of events makes this evident. Kelley gave Tyes-Williams an "Excellent" performance rating on April 7, 2017. Compl. ¶¶ 57, 79(d). And on April 18, 2017, Tyes-Williams requested that she be permitted to telework two days per week, but Kelley subsequently authorized only one day per week. *Id.* ¶¶ 60–61, 79(e). Tyes-Williams filed this lawsuit on June 16, 2017, well before 180 days had elapsed from either of these alleged acts of retaliation. Accordingly, the Court must dismiss her retaliation claim to the extent that it relies on them for failure to exhaust.

Thus, the only remaining portions of her retaliation claim that Tyes-Williams could have exhausted are based on the delay in approving her transfer request, which she made in March 2016, Compl. ¶¶ 42–43, 79(c), and on the remainder of her performance-evaluation claim, which arose out of a conversation in June 2016, *id.* ¶¶ 55, 79(d). In other words, those are the only acts of retaliation she alleges that could have fallen both (1) within 45 days before her EEO contacts on March 18, 2016, and June 22, 2016, and (2) more than 180 days before she filed this lawsuit. The Court assumes for purposes of this analysis that she has exhausted those aspects of her

retaliation claim and will proceed to analyze the sufficiency of these two acts as potential bases for that claim.

### 2. Materially Adverse Action

An employee fails to state a retaliation claim if she has not alleged a materially adverse action, which is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination,'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)), and that "affect[ed] the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm," *Holcomb v. Powell,* 433 F.3d 889, 902 (D.C. Cir. 2006) (internal quotation and citation omitted).

Neither of Tyes-Williams's remaining alleged acts of retaliation are materially adverse to her. As for the performance-evaluation claim, Tyes-Williams had a phone call with Kelley on June 1, 2016, where she raised concerns about her 2016 performance standards being unworkably vague, and he dismissed her concerns. Compl. ¶ 55. Performance evaluations can qualify as materially adverse actions only when they concretely affect the employee's "position, grade level, salary, or promotion opportunities," *Taylor*, 571 F.3d at 1321 (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008)), or "when attached to financial harms," *Baloch*, 550 F.3d at 1199. Here, even if the standards by which Kelley evaluated her in 2016 were vague, Tyes-Williams does not identify any way in which they affected her status or her compensation. Thus, they cannot qualify as materially adverse actions.

As for the delay of her transfer, on March 1, 2016, Tyes-Williams requested to be transferred to Yazoo City, Mississippi; Kugler told her on March 14, 2016, that the request had not yet been approved; and "more than three months" later, the request was ultimately approved. Compl. ¶¶ 42–43. But delays in personnel actions—similar to the effect of performance

evaluations—are materially adverse only when they result in independent, tangible effects such as "endangering compensatory or advancement potential." *Zelaya v. UNICCO Serv. Co.*, 733 F. Supp. 2d 121, 131 (D.D.C. 2010); *see also Diggs v. Potter*, 700 F. Supp. 2d 20, 44 (D.D.C. 2010). Tyes-Williams does not plead any plausible way in which the three-month delay in approving the transfer *she* requested affected her compensation or career trajectory. Her conclusory allegation that it resulted in "past and future loss of income and benefits of employment [and] lost career and business opportunities and advancements" is not grounded in any of the events that she describes in her complaint. *See* Compl. ¶ 80. Thus, the three-month delay cannot qualify as a materially adverse action either.

Finally, Tyes-Williams argues that the Court may not consider these allegedly adverse actions individually—that in evaluating her retaliation claim, it must consider whether all the actions taken together, including those that she has not exhausted, would dissuade an employee from engaging in protected activity. Pl. Opp. at 30. As an initial matter, it is a small minority of courts in this district that have held that a retaliation claim *requires* the collective consideration of allegedly adverse actions. *E.g.*, *Payne v. Salazar*, 899 F. Supp. 2d 42, 56 (D.D.C. 2012); *Test v. Holder*, 614 F. Supp. 2d 73, 84 (D.D.C. 2009); *Nurriddin*, 674 F. Supp. 2d at 91. More common is the approach of deciding whether to consider retaliatory acts collectively "on a case-by-case basis." *Baloch v. Norton*, 517 F. Supp. 2d 345, 363 (D.D.C. 2007) (citing *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 464 (2d Cir. 1997)); *see also Walden v. Patient-Centered Outcomes Research Inst.*, 304 F. Supp. 3d 123, 134 (D.D.C. 2018); *Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 20–21 (D.D.C. 2016); *Taylor v. Mills*, 892 F. Supp. 2d 124, 148–49 (D.D.C. 2012). And here, where the plaintiff has not pleaded any facts indicating a cumulative effect of the adverse actions greater than the sum of their individual effects, the Court declines to do so,

especially regarding those claims she has failed to exhaust.[6] *See Taylor*, 892 F. Supp. at 148. The Court notes that this approach to evaluating whether a retaliation claim has met the pleading standard is consistent with the Supreme Court's characterization of such claims in *Morgan*. In that case, Court observed that while hostile work environment claims are based on the cumulative effect of many individual actions, retaliation claims are "discrete acts" that must be separately exhausted. 536 U.S. at 114.

Because all of the acts that Tyes-Williams identifies as retaliatory are either unexhausted or are not materially adverse to her, the Court will dismiss Count III in its entirety. And because the Court dispenses with Count III on these grounds, it need not address Defendant's additional argument that Plaintiff has failed to allege a causal connection between her protected activity and at least some of Defendant's alleged retaliatory acts.

## IV. Conclusion

For all of the above reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss (ECF No. 6) is **GRANTED**. Counts II, III, and IV of Plaintiff's Complaint (ECF No. 1) are **DISMISSED** for failure to state a claim on which relief can be granted.

/s/ Timothy J. Kelly<br>TIMOTHY J. KELLY<br>United States District Judge

Date: January 15, 2019

---

[6] Even if the Court were to collectively consider the two claims Tyes-Williams has in fact exhausted, its conclusion that her complaint fails to allege a materially adverse retaliatory action would be unaffected.

17